United States District Court
Southern District of Texas
**ENTERED**
November 28, 2017
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| WESLEY ARCENEAUX, *et. al.*, | § | |
| Plaintiffs, | § | |
| v. | § | CASE NO. 4:16-CV-3418 |
| | § | |
| FITNESS CONNECTION OPTION | § | |
| HOLDINGS, LLC, *et. al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This Fair Labor Standards Act ("FLSA") case is before the Court on the Motion for Conditional Certification of a Collective Action and Authorization for Class Notice ("Motion") [Doc. # 38] filed by Plaintiffs Wesley Arceneaux, Jr., Samuel Barnhardt, Adam Bellinger, Jose Benitez, Ramiro Berrones, Ethan Callahan, Damon Hodge, Willis Holman, Dwayne Jones, Herman McCord, Ike Miller, Randy Reyna, LaDerrick Stills, Sunshine Thornton, William Valk, Candace Weaver and John Yarbrough. Defendants Titan Fitness, LLC, Titan Fitness Texas, LLC, Titan Fitness NC-Charlotte, LLC, and Titan Fitness North Carolina (collectively, "Titan" or "Defendants") filed a Response [Doc. # 42], and Plaintiffs filed a Reply [Doc. # 48]. Having carefully reviewed the record and the applicable

legal authorities, the Court concludes that the pending Motion should be **denied** without prejudice.[1]

# I.     <u>BACKGROUND</u>

Defendants own and operate fitness clubs in Texas, North Carolina and Nevada under the name "Fitness Connection."   Each of the Plaintiffs is or was employed by one of the Defendants in either Texas or North Carolina.    All Plaintiffs allege that they regularly worked in excess of forty hours a week throughout the course of their employment with Defendants.   Collectively, the Plaintiffs have held numerous different positions as Defendants' employees.[2]

---

[1]     Defendants have also filed a Motion for Leave to File a Sur-Reply (the "Motion For Leave") [Doc. # 49].  Because the Court concludes that the Motion should be denied irrespective of Defendants' proposed sur-reply, the Motion for Leave is **denied as moot**.

[2]     As alleged in Plaintiffs' First Supplemental and Amended Complaint (the "Complaint") [Doc. # 41], each Plaintiff holds or has held the following positions while employed by Defendants: (1) Arceneaux – Assistant General Manager; (2) Barnhardt – Fitness Manager; (3) Bellinger – Fitness Manager and District Fitness Manager; (4) Berrones – Assistant Fitness Manager, Assistant General Manager and Membership Manager; (5) Benitez – Assistant General Manager; (6) Callahan – Assistant General Manager and Fitness Manager; (7) Hodge – General Manager; (8) Holman – Fitness Manager and District Fitness Manager; (9) Jones – Membership Manager and General Manager; (10) McCord – Assistant General Manager; (11) Miller – General Manager; (12) Reyna – Fitness Manager; (13) Stills – General Sales Manager; (14) Thornton – Fitness Manager; (15) Valk – Fitness Manager; (16) Weaver – Fitness Manager; and (17) Yarbrough – Fitness Consultant, Assistant General Manager, General Manager, Membership Manager, and Operations Manager.  Complaint [Doc. # 41], ¶¶ 3-19 at ECF 2-12.

The gravamen of Plaintiffs' Motion is that Defendants have violated the FLSA in two ways.  First, Defendants have allegedly misclassified employees with certain "managerial" titles as being exempt from the FLSA's overtime compensation requirements, and as a result, Defendants have improperly denied those misclassified individuals overtime pay.  More specifically, Plaintiffs contend that, notwithstanding their titles as "managers" while employed by Defendants, they spent the majority of their time engaged in sales activities that are not considered "exempt" under the FLSA.  Plaintiffs reason that they are therefore entitled to overtime compensation for their work in excess of forty hours a week.[3]  To address Defendants' alleged misclassification of these individuals, Plaintiffs seek conditional certification of the following class:

> All person(s) who were/are employed by [Defendants], during the applicable period (Plaintiff[s] contend[ ] three years from the date the original complaint was filed: 11-18-2013 to present), as Operations Manager, General Manager, Assistant General Manager, General Sales Manager, Membership Manager, District Fitness Manager, Fitness Manager and Assistant Fitness Manager who were declared exempt from FLSA overtime compensation requirements.

Motion [Doc. # 38], at ECF 8 (the "Manager Class").

---

[3]     *See* Motion [Doc. # 38], at ECF 8-9 ("Despite the position description and title, the primary duty of these 'management positions' was/is inside sales which are non-exempt to the overtime compensation provisions required by the FLSA.").

Second, Plaintiffs contend that Defendants skirted their obligations under the FLSA by requiring certain employees who are classified as non-exempt to work "off the clock," specifically, requiring them to perform duties before they clocked in or to continue to work after they clocked out, without overtime pay.  To address Defendants' alleged policy of requiring "off the clock" work, Plaintiffs also seek conditional certification of the following class:

> All person(s) who were/are employed by [Defendants], during the applicable period (Plaintiff[s] contend[ ] three years from the date the original complaint was filed: 11-18-2013 to present), as Fitness Consultants and Private Trainers who were declared non-exempt from FLSA overtime compensation requirements but were required to work in excess of 40 hours per week and not paid time and a half for all work performed in excess of 40 hours ("off the clock violation").

Motion [Doc. # 38], at ECF 8 (the "Non-Exempt Class" and, together with the Manager Class, the "Proposed Classes").

Plaintiffs, in support of their Motion, rely on evidence, such as their own sworn declarations,[4] documents produced by Defendants,[5] and deposition

---

[4]    *See* Arceneaux Declaration [Doc. # 38-5]; Barnhardt Declaration [Doc. # 38-6]; Benitez Declaration [Doc. # 38-7]; Berrones Declaration [Doc. # 38-8]; Callahan Declaration [Doc. # 38-9]; Hodge Declaration [Doc. # 38-10]; Holman Declaration [Doc. # 38-11]; McCord Declaration [Doc. # 38-12]; Miller Declaration [Doc. # 38-13]; Stills Declaration [Doc. # 38-14]; Valk Declaration [Doc. # 38-15]; Jones Declaration [Doc. # 38-16]; Weaver Declaration [Doc. # 38-17]; Reyna Declaration [Doc. # 38-18]; and Yarbrough Declaration [Doc. # 38-19].

[5]    *See* Fitness Connection Position Descriptions [Doc. # 38-2] and [Doc. # 38-3].

4

testimony.[6]  The Motion has been fully briefed and is now ripe for decision.

## II.    APPLICABLE LEGAL STANDARDS

### A.    FLSA Obligations

The FLSA provides that "no employer shall employ any of his employees
. . . for a workweek longer than forty hours unless such employee receives
compensation for his employment in excess of the hours above specified at a rate
not less than one and one-half times the regular rate at which he is employed."
29 U.S.C. § 207(a)(1).  An employee may sue his employer under the FLSA on
"behalf of himself . . . and other employees similarly situated."
29 U.S.C. § 216(b).  Similarly situated employees can "opt-in" to a lawsuit under
§ 207(a) to benefit from a judgment.

### B.    Standard for Conditional Certification

When considering whether to certify a lawsuit under the FLSA as a
collective action, courts in this federal district generally use a "two-stage
approach."  *See Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 461 (S.D. Tex.
2015); *see also Caballero v. Kelly Servs., Inc.*, Civil Action No. H–14–1828, 2015
WL 12732863, *3 (S.D. Tex. Oct. 5, 2015); *Diaz v. Applied Machinery Corp.*,
Civil Action No. H-15-1282, H-15-2674, 2016 WL 3568087, *4 (S.D. Tex. June

---

[6]     *See* Deposition of Josh Harwood [Doc. # 38-1]; Deposition of Jason Pelt
[Doc. # 38-3]; and Deposition of Sunshine Thornton [Doc. # 48-1]

24, 2016); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012).  At the first stage, the Court decides whether to conditionally certify a class into which individuals may opt if they seek to benefit and be bound by the outcome of the case.  At this stage, in essence, the Court is deciding whether to issue notice to potential class members.  *See Walker*, 870 F. Supp. 2d at 465.  The second stage occurs when discovery is largely complete.  If it chooses, the defendant may move to "decertify" the conditionally certified class.  *See id.* at 466.  "Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations."  *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010).

At the notice stage, the Court's decision is generally based on the pleadings, affidavits, and other limited evidence.  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Walker*, 870 F. Supp. 2d at 465.  At this stage, the plaintiff is required to show that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit."  *Walker*, 870 F. Supp. 2d at 465-66; *see also Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 289 (S.D. Tex. 2012).  "Although collective actions under the FLSA

6

are generally favored, the named plaintiff(s) must present some factual support for the existence of a class-wide policy or practice." *Carey v. 24 Hour Fitness USA, Inc.*, 2012 WL 4857562, at *1 (S.D. Tex. Oct. 11, 2012) (citing *Walker*, 870 F. Supp. 2d at 466).   Conclusory allegations that other employees are similarly situated are insufficient to justify conditional certification. *Rodriguez v. Flower Foods, Inc.*, Civil Action No. 4:16–CV–245, 2016 WL 7210943, at *2 (S.D. Tex. Dec. 13, 2016).

To be "similarly situated," there must be "substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.'" *McKnight*, 756 F. Supp. 2d at 801 (quoting *Mooney*, 54 F.3d at 1213). Certification should be denied "'if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).   Where minimal evidence is advanced at the notice stage, the conditional class determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in.  *See id.* (quoting *Mooney*, 54 F.3d at 1214 n.8); *see also Walker*, 870 F. Supp. 2d at 465.

Where the parties have conducted substantial discovery in connection with class certification, however, some courts have applied a more exacting level of

7

scrutiny rather than the lenient one typically associated with the notice stage.  *See, e.g.*, *Hardemon*, 2011 WL 3704746, at *2 ("The voluminous discovery that the [p]arties have already conducted in connection with class certification in this matter . . . merits a heightened level of scrutiny . . ."); *Basco v. Wal-Mart Stores, Inc.*, No. CIV.A. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter.").  These courts have made factual determinations to determine whether the claimants are similarly situated based on the totality of the circumstances.  *See Hardemon*, 2011 WL 3704746, at *3 (citations omitted). Because the parties here have conducted some discovery on the conditional certification issues, this Court has considered applying a more exacting standard, rather than the "lenient" one advocated by Plaintiffs.  Nevertheless, the Court does not use a heightened burden; the Court evaluates the parties' evidence and argument under the lenient standard typically applied in this circuit.

## III.   <u>ANALYSIS</u>

Plaintiffs contend that the Court should conditionally certify both the Manager Class and the Non-Exempt Class.  The Court will consider the requirements for conditional certification with respect to each of the Proposed Classes separately.

A.     <u>Non-Exempt Class</u>

1.     **Evidence that Other Aggrieved Individuals Exist**

To satisfy the first element under the analysis Plaintiffs need only show that there is a reasonable basis for believing that other aggrieved individuals exist.  *See Heeg*, 907 F. Supp. 2d at 862.   Plaintiffs, however, have failed to carry their minimal burden with respect to this element.   The Non-Exempt Class consists of employees with one of two job titles: private trainer or fitness consultant.   No Plaintiff is, or ever was, a private trainer.  Only one Plaintiff, Yarbrough, ever was employed by Defendant as a fitness consultant.    In his sworn declaration, Yarbrough avers that he routinely worked over forty hours per week as a fitness consultant, but does not identify any other fitness consultants who did the same. Yarbrough Declaration [Doc. # 38-19], ¶ 6 at ECF 2.  Moreover, while Yarbrough names four individuals who he believes would be interested in joining this lawsuit, none of those individuals are identified as being, or having been, fitness consultants.  *Id*., ¶ 7 at ECF 2.[7]  Yarbrough's failure to identify the positions of the individuals he believes would be willing to join the lawsuit is significant because he is a member of both of the Proposed Classes, and without any such specificity,

---

[7]     The same is true of the other fourteen declarations that Plaintiffs have submitted in support of their Motion.   Not one of the declarants identifies any fitness consultants or private trainers who have allegedly been aggrieved by Defendants.

it is unknown which of the Proposed Classes those individuals are willing to join. Plaintiffs cite no competent evidence that would allow the Court to draw a reasonable inference that Defendants violated FLSA rights of any of its private trainer or fitness consultant employees other than Yarbrough.  Based on the current record, Plaintiffs have not satisfied the first element for conditional certification with respect to the Non-Exempt Class.  *See Heeg*, 907 F. Supp. 2d at 862; *cf. Rodriguez*, 2016 WL 7210943, at *2 ("[t]o show that there are similarly situated employees, a plaintiff would ideally produce affidavits from potential class members affirming their intention to join the lawsuit.") (citing *McKnight*, 756 F. Supp. 2d at 805 (S.D. Tex. 2010)).

## 2.    Existence of Similarly Situated Individuals

To be "similarly situated," there must be "'substantial allegations that potential members were together the victims of a single decision, policy, or plan.'" *Caballero v. Kelly Servs., Inc.*, Civil Action No. H–14–1828, 2015 WL 12732863, at *3 (S.D. Tex. 2015) (quoting *McKnight*, 756 F. Supp. 2d at 801).  Additionally, "[f]or the class representative to be considered similarly situated to the potential opt in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Vanzzini v. Action Meat Distribs.*, Civil Action No. H–11–4173, 2012 WL 1941763, at *3 (S.D. Tex. May 29, 2012) (quoting *Ryan v. Staff Care, Inc.,* 497 F. Supp. 2d 820,

825 (N.D. Tex. 2007)).  "Plaintiffs 'need only show that their positions are similar, not identical, to putative plaintiffs.'"  *Walker*, 870 F. Supp. 2d at 468 (quoting *Jesiek v. Fire Pros, Inc.,* 275 F.R.D. 242, 246 (W.D.  Mich. 2011)).  However, "if the job duties among potential members of the class vary *significantly,* then class certification should not be granted."  *See Dreyer*, 2008 WL 5204149, at *2 (emphasis in original).

*Off the Clock Contentions* – Plaintiffs allege that Defendants had an impermissible policy of expecting non-exempt employees to "work off the clock," by making sales calls, attending meetings or completing work assignments at the workplace while not being clocked in, without receiving overtime pay.  There is no dispute that, at all times relevant to this lawsuit, Defendants have had a formal wage and hour policy that requires non-exempt employees to accurately record their time by "checking-in and out at the beginning and end of shifts and meal breaks."[8]  The policy stated that employees who falsify their time sheets are subject to disciplinary action, including termination.[9]  Notwithstanding Defendants' formal policy, Plaintiffs contend that Defendants had a "uniform policy" of requiring members of the Non-Exempt Class to take certain work home with them or

---

[8]     Arterberry Declaration [Doc. # 42-1], at ECF 46.

[9]     *Id.*

otherwise work "off the clock."   Plaintiffs also allege that Defendants systematically altered employee time cards to avoid having to pay those employees overtime compensation.[10]

Of the seventeen Plaintiffs currently party to this lawsuit, only one, Yarbrough, is alleged to have been classified as non-exempt at any time during employment with Defendants.[11]   There is no evidence that Yarbrough, while

---

[10]   To the extent that Plaintiffs argue that one or more of Defendants' policies also are applicable to the Manager Class, the arguments are not pertinent at this juncture. As exempt employees, members of the Manager Class would not be entitled to overtime compensation for working "off the clock" unless they were misclassified.

[11]   Plaintiffs' only purported proof that Defendants had a uniform policy of requiring non-exempt employees to work "off the clock" is the deposition testimony of Plaintiff Thornton. *See* Reply [Doc. # 48], at ECF 4-6.   There are no allegations or evidence that Thornton was ever classified as non-exempt.   Complaint [Doc. # 41], ¶ 16 at ECF 10.   According to the Reply, Thornton has been employed by Defendants as an Assistant Fitness Manager and a Fitness Manager.   *Id.* at ECF 5. In the Complaint, Thornton is alleged to be employed by Defendants as a Fitness Manager.   Complaint [Doc. # 41], ¶ 16 at ECF 10.

The discrepancy between Plaintiffs' Complaint and assertions in the Reply is also indicative of a larger issue with the Motion: the lack of clarity as to whether Defendants classified Assistant Fitness Managers as exempt or non-exempt. Plaintiffs specifically allege at least three times in the Complaint that Defendants classified Assistant Fitness Managers as exempt.   Complaint [Doc. # 41], ¶¶ 6, 24, 34 at ECF 4, 13, 14.   Plaintiffs repeatedly maintain that position in the Motion. Motion [Doc. # 38], at ECF 7, 8, 11, 12, 16.   Berrones, the only Plaintiff in this case who was both employed as an Assistant Fitness Manager and submitted a sworn declaration, avers in his declaration that as an Assistant Fitness Manger, he "was classified as an exempt salaried employee."   Berrones Declaration [Doc. # 8-8], ¶ 4 at ECF 1.   Defendants contend in their Response that Assistant Fitness Managers are classified as non-exempt, Response [Doc. # 42], at ECF 9.   Plaintiffs do not explicitly address this contention in their Reply and continue to assert that it is "undisputed that all times pertinent herein [Defendants] classified their . . .
(continued…)

classified as non-exempt, was aggrieved by any of Defendants' purportedly improper "off the clock" policies for non-exempt employees.  With respect to Defendants' alleged policy of requiring members of the Non-Exempt Class work "off the clock," Plaintiffs cite no evidence that Yarbrough suffered from this alleged policy.  The excerpts of Yarbrough's deposition testimony that are in the record demonstrate that Yarbrough is not asserting claims in this lawsuit that he was required to work "off the clock" while he was classified as non-exempt.[12]

There is also no evidence that Yarbrough was required to "work off the clock" by taking work home with him so he could complete it after he had clocked out.  While there is some evidence in the record that Personal Trainers were at

---

(continued…)
Fitness Managers, and Assistant Fitness Managers as FLSA Exempt."  Reply [Doc. # 48], at ECF 6.  For purposes of deciding the Motion, the Court, consistent with Plaintiffs' pleadings and the declarations they have provided in support thereof, assumes Defendants classified Assistant Fitness Managers as exempt.

[12] *See* Yarbrough Deposition [Doc. # 43-5], at ECF 3 (stating he is not claiming he is owed overtime for his work as an Operations Manager); *id.* at ECF 4 ("Q: My next question, though, is did you work off the clock when you were a fitness consultant? A: Not to my knowledge.").  Although Yarbrough states in his declaration that he "was frequently required to work before and/or after clocking in," and that he was told that he "should always be available" irrespective of whether or not he was "on the clock," Yarbrough Declaration [Doc. # 38-19], ¶ 3 at ECF 1, there is no evidence that these statements refer to his time as a non-exempt, rather than exempt, employee.

times required to take client folders home to work on them "off the clock,"[13] none of the Plaintiffs in this case, including Yarbrough, were ever employed by Defendants as a Personal Trainer.  Plaintiffs cite no evidence that any employees other than Personal Trainers were ever required to work on client folders at home.

Therefore, even assuming Plaintiffs adequately demonstrated that Defendants have a single policy of requiring members of the Non-Exempt Class to work "off the clock," either by working at the gym or at their home while not clocked in, Plaintiffs' Motion fails for that proposed class because Plaintiffs have offered no evidence that the lone Plaintiff alleged to have been classified as non-exempt in this case was aggrieved by that policy.

*Alterations of Timecards Contentions* – Turning to Defendants' alleged practice of altering non-exempt employees' time cards to avoid having to pay overtime compensation, there is some evidence in the record that Yarbrough was adversely affected by such conduct.[14]  The key inquiry for purposes of the Motion is whether Yarbrough was the victim of a "single decision, policy, or plan"

---

[13]     *See* Pelt Deposition [Doc. # 42-9], at ECF 6-7; Callahan Deposition [Doc. # 43-1], at ECF 11.

[14]     *See* Yarbrough Deposition [Doc. # 43-5], at ECF 4 ("but it doesn't take into the [sic] account the fact that the managers were going back and editing our time to remove the hours because overtime wasn't allowed unless it was approved, and they were being written up for it."); *id.* ("Q: Okay. So I just want to make sure I'm clear. You're saying even though – so, even though you got paid some of this overtime, there was more and it was edited away; is that right? A: Correct.")

effectuated by Defendants. Plaintiffs' construction of the Non-Exempt Class is intended to encompass all Fitness Consultants and Private Trainers at all gyms owned and operated by Defendants in Texas, North Carolina and Nevada. Plaintiffs have failed to present factual support of a nationwide policy or practice of time card alterations. The minimal evidence cited by the parties on this issue is limited to occurrences in Texas.[15] Plaintiffs cite no facts supporting a reasonable inference that these practices occurred at Defendants' locations in North Carolina or Nevada.[16] In contrast, Jason Pelt, a former Vice President of Fitness and Regional President for Defendants and on whose testimony Plaintiffs rely heavily in the Motion, stated in his deposition that in the one instance he was aware of where an employee deliberately altered time cards, that employee was

---

[15]   *See* Thornton Deposition [Doc. # 48-1], at ECF 8-10 (describing practice of editing Assistant Fitness Manager time cards pursuant to instructions from Plaintiff Holman. Both Thornton and Holman were only employed by Defendants in Texas); Arceneaux Deposition [Doc. # 43-2], at ECF 5 (stating that his overtime hours were reduced at the direction of Defendants' President and Vice President of the Texas market).

[16]   More generally, the Court notes that none of the Plaintiffs are alleged to have worked in Nevada and Plaintiffs do not offer any factual support for any of their assertions regarding Defendants' operations in Nevada. Plaintiffs have not carried their burden of demonstrating that conditional certification would be appropriate as to any of Defendants' current or former employees in Nevada. While Plaintiffs have submitted evidence that Plaintiffs Barnhardt, Callahan, Miller and Thornton were employed by Defendants in North Carolina at some point during the relevant period and have alleged that those individuals were misclassified as exempt, Plaintiffs do not cite any competent evidence that any of these Plaintiffs had their time cards altered while they were working for Defendants in North Carolina.

15

disciplined.[17]   Although Pelt's testimony is by no means dispositive of the issue of whether Defendants had an impermissible practice of editing its non-exempt employees' time cards, given Plaintiffs' extensive reliance on his deposition and failure to otherwise present facts supporting a reasonable inference that Yarbrough had his time cards edited pursuant to a widespread policy or practice of Defendants', it is persuasive evidence that Plaintiffs are not entitled to the broad conditional certification they seek here.

Accordingly, Plaintiff Yarbrough cannot serve as class representative for any claims based on Defendants' purported policy of requiring non-exempt employees to work "off the clock."   Without a representative plaintiff, conditional certification of a class based on such policy is not warranted.   *See England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005) ("To certify a collective action under the Fair Labor Standards Act, two requirements must be met. First, the named representatives and the putative members of the prospective FLSA class must be similarly situated.").   The record before the Court does not support a reasonable inference that Yarbrough or other Plaintiffs were aggrieved by any such policy.   Additionally, Plaintiffs have not met their burden to produce facts that support a reasonable inference that the editing of Yarbrough's time cards

---

[17]       Pelt Deposition [Doc. # 38-4], at ECF 16-17.

16

was pursuant to Defendants' "single decision, policy, or plan."  Plaintiffs have not satisfied either the first or the second element of their conditional certification claim for the Non-Exempt Class and the Motion is **denied** without prejudice with respect to that class.

The Court turns to conditional certification analysis for Plaintiffs' proposed Manager Class.

### B.   <u>Manager Class</u>

#### 1.   **Evidence that Other Aggrieved Individuals Exist**

Plaintiffs have met their burden regarding the Manager Class to demonstrate that there is a reasonable basis to believe other aggrieved individuals exist.  In their Response, Defendants do not contest Plaintiffs' satisfaction of this element regarding the Manager Class.  Plaintiffs are seventeen individuals with "manager" titles who have held a variety of positions in different facilities owned and operated by Defendants.  There is no dispute that Plaintiffs do not comprise the entirety of the "managers" employed by Defendants during the relevant period.  Fifteen Plaintiffs have submitted sworn declarations averring that there are others interested in joining this lawsuit.[18]  According to these declarations, Plaintiffs have

---

[18]    Plaintiffs have not identified the jobs held by the others they claim seek to join the suit, a deficiency in Plaintiff's evidence.  However, in context, as described in the accompanying text, this omission is not fatal to Plaintiffs satisfying this element of the class certification test.

held different "managerial" titles under the supervision of different managers and executives at different locations owned and operated by Defendants.  Plaintiffs each aver they were similarly misclassified as FLSA exempt given their primary role as salespeople.  The diverse circumstances under which Plaintiffs explain they were misclassified as exempt employees supports a reasonable inference at this preliminary stage of the ligation that the alleged misclassifications were not isolated, employee specific issues.  That, viewed together with the fact that all Defendants' managers, including those who are not Plaintiffs, are allegedly classified as exempt and the other evidence that has been submitted in connection with the Motion, further bolsters the Court's conclusion that there is a reasonable basis to believe that other potential members of the Manager Class exist.  The first element for conditional certification is satisfied for the proposed Manager Class.

### 2.    Existence of Similarly Situated Individuals

For purposes of the Motion, the Court assumes that Plaintiffs have sufficiently alleged the existence of an impermissible policy with regard to the Manager Class.  Specifically, the Court assumes that Plaintiffs have made an adequate showing at this preliminary stage of the litigation that Defendants misclassified members of the Manager Class as exempt employees under the FLSA in order to avoid paying those individuals overtime.  The more difficult question, and the focus of Defendants' Response, is the extent to which the members of the

18

Manager Class share similar job duties.

On its face, Plaintiffs' effort to consolidate varied job titles into a single class is problematic. The Manager Class consists of employees with eight different job titles. Although Plaintiffs make the conclusory assertion that all individuals with the numerous different job titles encompassed by the Manager Class are "similarly situated with respect to their job requirements and with regard to their pay provisions," they fail to cite any competent evidence or authority in support of their position. For example, Plaintiffs offer no explanation as to how a General Manager, who is responsible for a fitness center's overall performance,[19] has similar job duties to an Assistant Fitness Manager, who sells personal training services and is subject to the supervision of the General Manager and Fitness Managers.[20] It is also unclear why it is appropriate for the Manager Class definition to include Operations Managers, who have been classified as non-exempt in Texas since September 2016.[21] Plaintiffs' provide no justification for

---

[19]    *See* Miller Declaration [Doc. 38-13], ¶ 3 at ECF 1 (stating duties of General Manager included "oversee[ing] the daily operations of the club); Jones Declaration [Doc. 38-16], ¶ 3 at ECF 1 ("My job duties as General Manager are to manage the overall profits and losses of the location.").

[20]    Arterberry Declaration [Doc. 42-1], ¶ 8 at ECF 3-4.

[21]    Arterberry Declaration [Doc. 42-1], ¶ 10 at ECF 4-5. The Court also notes that Plaintiffs have not alleged in the Complaint, which was filed *after* the Motion, that Operations Managers were misclassified. Nor are there any allegations in the Complaint that District Fitness Managers are misclassified. *See generally*
(continued…)

potentially including non-exempt employees in a class whose entire premise is to represent individuals who have allegedly been misclassified as exempt.

Of Plaintiffs' fifteen sworn declarations in support of their Motion, four (those of Plaintiffs Berrones, Callahan, Holman, and Yarbrough) were by Plaintiffs who have held more than one of the job titles covered by the proposed Manager Class. Plaintiffs' descriptions of their responsibilities reveal a likelihood of meaningful differences among their various positions.[22] Plaintiffs' own

---

(continued…)
Complaint [Doc. # 41]. Plaintiffs cite no authority to support their argument that individuals who are not alleged in the Complaint to be misclassified are appropriate members of the Manager Class.

[22] *See* Berrones Declaration [Doc. # 38-8], ¶ 3 at ECF 1 ("My job duties as Assistant Fitness Manager were to sell to get paid, in other words commission, but also train the trainers underneath you, and control their schedule. I was also an Assistant General Manager which mainly focused on selling memberships, taking care and supervising the Fitness Consultants, but also take care of the whole gym, especially when there was no GM. And finally, they changed the name to Membership Manager, which is still mainly selling memberships, but also developing and take care of the fitness consultants underneath you."); Callahan Declaration [Doc. # 38-9], ¶ 3 at ECF 1 ("My job duties as Assistant General Manager were to manage 2-4 fitness counselors, train and develop each of them constantly. Required to sell a minimum of 100 memberships throughout the month. Keep books on membership side for entire gym, audit all books from the GM, myself and each of my fitness counselors . . . . My job duties as Fitness Manager were to manage 10-12 personal trainers and 2 others on my sales team. Was responsible for the majority of the sales of personal training. Audit each trainers folders on each and every client. Keep my own books for the entire club."); Yarbrough Declaration [Doc. # 38-19], ¶ 3 at ECF 1 ("My job duties as Fitness Consultant, Assistant General Manager, General Manager, Membership Manager and Operations Manager have varied from calling customers, managing and training other staff members, assisting with customer problems, selling products and general retail management."); Holman Declaration [Doc. # 38-11], ¶
(continued…)

descriptions contain significant differences in job duties among the distinct job titles encompassed by the proposed Manager Class.   These distinctions are consistent with Defendants' evidence that employees covered by the Manager Class are not similarly situated.[23]   While Plaintiffs need not have "identical" job duties to be "similarly situated," Plaintiffs' proposed Manager Class plainly involves jobs with material distinctions in positions' authority and managerial responsibilities, issues that are at the heart of Plaintiffs' misclassification claim. Therefore, even under the lenient standard for conditional certification, Plaintiffs have not carried their burden to demonstrate that the proposed members of the Manager Class are similarly situated.   The Motion is **denied without prejudice** on

---

(continued…)

2 at ECF 1 ("My job duties as Fitness Manager and District Fitness Manager were sales, fitness assessments, customer service, payroll, selling personal training packages, hiring, training, development of new sales team, sales calls, setting up assessments by phone or on the gym floor.").   Although Holman's descriptions indicate similarities between the Fitness Manager and District Fitness Manager positions, the descriptions ignore key differences such as reporting lines (District Fitness Managers report to Regional Presidents whereas Fitness Managers report to a location's General Manager) and geographic scope of responsibility (District Fitness Managers are responsible for supervising an assigned region whereas Fitness Managers only have responsibilities in the location that they work). Fitness Connection Position Descriptions [Doc. # 38-2], at ECF 1-4; Arterberry Declaration [Doc. 42-1], ¶¶ 16-17 at ECF 6-7.

[23]   *See* Arterberry Declaration [Doc. 42-1], ¶¶ 4-17 at ECF 2-7 (describing differences among the jobs included in Manger Class definition in Houston locations); *id.* at ECF 11-20 (showing differences in compensation plans for General Manager, Fitness Manager, and Assistant General Manager); Newbury Declaration [Doc. 42-2], ¶¶ 4-5 at ECF 2-3 (confirming same differences are applicable to manager positions in North Carolina locations).

conditional certification of the Manager Class.

### C.       Evidence of Other Likely Opt-Ins

Various courts, including this Court, also require a plaintiff seeking conditional certification to present evidence of other similarly situated individuals who want to opt into the lawsuit.  *See Jones v. Xerox Commercial Sols., LLC*, Civil Action No. 4:13–cv–650, 2013 WL 5945652, at *4 n.43 (S.D. Tex. Nov. 6, 2013) (citing cases).  Other courts do not impose this requirement.  *See Diaz v. Applied Machinery Corp.*, Civil A. No. H-15-1282, H-15-2674, 2016 WL 3568087, at *4 (S.D. Tex. June 24, 2016).  Generally, this factor is easily satisfied if there is some evidence that others are likely to want to join the litigation.  The Fifth Circuit has not addressed this requirement.

While there are seventeen Plaintiffs, none of the declarations or other evidence filed by Plaintiffs indicates the job title or FLSA classification of any other individuals that are identified as interested in joining this lawsuit.  There is no need for certification of a collective action if the existing Plaintiffs are the only individuals who seek to pursue FLSA claims, because Plaintiffs are already parties to the case.  The Court does not decide at this time whether this factor has been satisfied for either proposed class.

### D.       Request for Notice

Plaintiffs request court-authorized notice to members of the Proposed

Classes announcing the right to opt into this suit to vindicate possible rights under the FLSA.  This request is **denied as moot** due to the Court's denial of conditional class certification.

## IV.   <u>CONCLUSION AND ORDER</u>

Plaintiffs have not carried their burden to demonstrate that they are entitled to conditional certification for either the Manager Class or the Non-Exempt Class. For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion [Doc. # 38] is **DENIED without prejudice**.

Signed at Houston, Texas, this 28 day of **November, 2017**.


NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE